May it please the Court, Don Webb for Institute for Wildlife Protection. I represent a group of scientists who are trying to protect the monosage grouse. The Institute has submitted five listing petitions to the Service for various species, and every one of those five has been delayed illegally. This case concerns a petition to list the monosage grouse under the ESA, and there are three issues. The first relates to delay beyond the 90-day deadline for making an initial 90-day finding. We are not, in this case, challenging that regular or initial 90-day finding. The second is whether plaintiffs can challenge the emergency listing denial made by the Service, on which they've already made a decision. The third is whether intervention was properly allowed. As to the first issue, the delay issue, the controversy concerns the phrase to the maximum extent practicable in the statute. Counsel, what is the status at the moment? Did we understand that subsequent to the filings, some findings have been made? Yes, they published a finding in the Federal Register after we filed suit. Does that affect any of the issues? We don't think so, Your Honor. We think it does not move any of the issues at all. And as to the first issue on delay, are you saying you're not challenging? I'm not sure I understand what you're saying. We are challenging the delay itself, but not that regular finding that they made, the initial 90-day finding. And if you're correct, what's the relief under the 90-day delay or some reasonably practical period thereafter? We could get declaratory relief, which is important, and there are cases in this and the D.C. Circuit on that. It's important to inform the agency and to inform the public. And we think we might be able to get injunctive relief for the repeated pattern of delays for our four other petitions. If you are not successful in your challenge on the delay and then you move to the emergency designation issue, I'm not clear what relief would be possible now because, in effect, you, of course, wanted the species to be designated so you could have a 12-month study. They initially said no. Later they said yes, but then in the end it didn't come out the way you might have liked. What would be the relief on your second claim? The second claim? The service can enter an emergency listing at any time. No, but the point is if they already have done what is, in effect, the study that you would do under the 12 months and come out in a position that's negative to what you would prefer, what would be the point of now having an emergency listing at this point in time, which is way after your initial emergency listing? An emergency listing now would protect the grouse for 240 days and could also be extended by the service. But what would be the basis for an emergency listing now when they just came out with a substantive finding to the contrary? So, in other words, the emergency listing you're asking us for was to take place in March. I think I can answer that. Okay. I think I understand your question now, Your Honor. I had a problem with the chronology, the practical chronology versus the litigation chronology. There is a different legal standard for an emergency listing. The term of art in the statute is significant risk. Okay. Well, let's start there. The significant risk, at what point does that need to exist? Because we only have the record in front of us. So that would be in March? Is that what would be the March listing? Yes, Your Honor. Okay. Well, actually, we think that the finding they made on emergency listing that was published in the Federal Register is exactly the same decision that they had made before. And I have specific points. I can speak to that if you'd like to skip to that. What I'm having difficulty in following, Mr. Webb, is having had the sage-grouse, maybe not the mono-sage-grouse, but the sage-grouse, which I understand is a category which includes the mono-sage-grouse listed as an endangered species, that happen? It did not happen, Your Honor. I'm sorry to interrupt, but that would be the greater sage-grouse. That has not happened. Well, what has happened? This is what puzzles me. It seems to me you refer to a finding. Help us with what, in fact, has happened with respect to this particular species. After we filed suit, the service made a finding in the Federal Register that denied protection to the mono-sage-grouse. That was an initial 90-day finding. That is the sort of regular course of things, not the emergency. In that finding, they also have, as I recall, two paragraphs that simply restates what's in the petition and restates their decision that they made by letter, and that's in the excerpts of record. But later, didn't the service make a finding that some type of sage-grouse was an endangered species? No, Your Honor. They decided that it was not endangered. Okay. Let's stop there, because first they make the 90-day finding, which is adverse to your position. Then don't they go back and say, you know, we need to take a closer look at this? So in effect, they initiate what would be equivalent to that 12-month study that you normally would get if you made an emergency finding. Am I correct on that? Almost, I think. Okay. Help me be more precise. The later finding that was made on the greater sage-grouse, and that's the most recent finding on sage-grouse made by the service, covers the entire greater sage-grouse species. Including the mono. Including the mono. Okay. But the mono is genetically different. We know that. That's in the factual record. The service chose to deal with that study in a different way than they had before. That's a different case. We don't want to get into the genetic predisposition of these birds right now. We want to get into where they are. So they make a finding on all sage-grouse, which includes the mono. On the species that includes this particular unit, which is a, we think, a distinct population segment. And that's more of a substantive disagreement you have. I'm just trying to get the procedure down. But in doing that, haven't they in effect made a substantive decision, having undertaken now a more exhaustive study, that in effect moots your 90-day emergency finding, and now you should appeal from that decision? No. Because that finding was made on the entire species. This is a tiny segment of that species. Which is included in that finding? We don't think so. Well, wait a second. Anything that's unique and rare and different genetically or otherwise about the mono sage-grouse is diluted within the greater species. That's why Congress included these three levels of diversity that it sought to protect. You know what? You're confusing me because I can understand that their finding on the greater sage-grouse population might not be as precise as you would like that would identify a particular species and treat it in a certain way. And that's kind of a substantive disagreement. But from a procedural standpoint, didn't they include your species in their big study? We don't think so, Your Honor. And why not? It simply doesn't relate to the mono sage-grouse as a distinct unit. That's what our petition is based on. Well, there's no obligation that they have to do the mono sage-grouse separately if they can do it in conjunction with other sage-grouse, can't they? We can't find any findings within the greater sage-grouse finding from the Fish and Wildlife Service that relates specifically to the mono sage-grouse as a distinct unit. They simply decided that they're going to explain away or ignore the scientific studies that show that it is distinct, and then they considered the whole species. What difference does it make if it's a distinct species or not if it's protected? A distinct population segment of a species. What difference does it make if it is protected? Oh, it's not protected, Your Honor. I'm sorry, but the no sage-grouse that relate to the mono sage-grouse or include the mono sage-grouse are protected. But the sage-grouse are protected. No, sir, it is not. Because their finding in the end is it didn't warrant a further listing, correct? I mean, the finding that they made after the litigation was filed, what you got or what they got was a bigger look at the issue, but the result is the same. Is that correct? In other words, no protection? Yes. Okay. But my question still remains, then, if in their view they looked at all the sage-grouse, which includes the mono sage-grouse, it seems to me your remedy is to appeal from that study, the finding in that study to say that they were substantively wrong in their failure to address this as a discrete species. If they had looked at the entire greater sage-grouse and included in that look a review of the mono sage-grouse as a distinct unit, then that would be correct. But they did not do that. Well, then, from your point of view, I gather, is that this finding, which denied the listing for the whole category, simply is irrelevant to your emergency application. Is that correct? Exactly. In other words, nothing, from your point of view, nothing has happened with respect to your request for an emergency determination. That's right, Your Honor. Now, I think the government is telling us that they thought they were acting on that. Is that, are we misreading? I don't see that in the briefing for the greater sage-grouse finding, which was made just weeks ago. They think they reconsidered it when they issued the finding on the mono sage-grouse as a result of our suit. We think that's exactly the same decision. And let me explain why. Well, on that point, then, if we were to determine that their decision had been made within a practicable period of time, albeit beyond 90 days, I think that they made it in December. I think that's right. Okay. Instead of March, they made it in December. So let's say, just hypothetically, that that is legally permissible under the practicable standard. Then what you would like us to do, I assume, is to review under the ESA whether that determination in December is legally valid. Yes, we would like it reviewed under the ESA. And if the panel believes that it is not reviewable under the ESA, we would then turn to either the first or second prong of the APA, Section 704. Okay. But your position is that it's reviewable under either category? Under either statute? Our position, and there's case law in this, is that if there's a comprehensive citizen suit provision, one first looks at that. And only if the citizen suit provision doesn't offer a cause of action or jurisdiction, then does one go outside to the APA and to 28 U.S.C. 1331. All right. What is your specific authority within the citizen suit provision? And what is the standard of review with respect to that? Well, the standard of review is an entirely different concept. And the standard of review is provided under the APA in whatever statutory fragment. I'm just taking it step by step. You're relying on the citizen suit provision. We think that review is proper under the ESA because it's a mandatory action under G1C. And we don't agree with the services 28J letter, which relates to the lack of a discrete duty under the APA. And here, and this is a very important aspect of this case, the decision was already made. So while they may have discretion as to whether or not to make a 90-day finding, that's the initial regular finding, not the emergency listing finding. While they may have discretion as to whether or not to make, as to how they make that finding, we think it's a mandatory duty that when a petition comes in, they have to act on that. And that's what's in the letter. In that regard, I thought maybe the district court had missed a point because while they do have discretion, which in and of itself, their ultimate decision might not be reviewable under Bennett v. Speer, the underlying criteria by which they have to address the petition would be reviewable. Is that correct? Exactly, Your Honor. However, the district court didn't undertake that review. But since it's on the record, would it be up to us to determine whether there was, in effect, substantial evidence or whether it was arbitrary and capricious, their implementation of those discrete standards? There are cases where the circuit has made those decisions, but in general my sense is that the circuit simply returns it, remands it to the district court for those findings of fact. So the district courts are well-equipped to make those findings. As to that criteria, is there anything in the record on appeal which shows that you produced some evidence on a motion for summary judgment indicating that Secretary Norton had not considered that criteria? Are we discussing the emergency listing or the? The criteria that Judge McCune was just talking about a moment ago. Yes, there is. Can you cite me to that? Oh, I'm sorry. In the excerpt of record here? Yes. How do we know that the you had used some evidence in the district court to show that Secretary Norton had not considered the criteria underlying the discretionary act? Well, respectfully, Your Honor, I don't think that that question is presented. This emergency listing claim was dismissed and had not reached the summary judgment stage, although it was briefed. The court decided, the district court decided to dismiss it, so we're appealing that dismissal. Wasn't that upon a summary judgment? I thought she dismissed it on a Rule 12. Actually, the Rule 12 motion that the government made was denied, the order in motion to dismiss. One was granted on the first claim and denied on the second. And we're now talking about the second claim. The emergency listing claim. And that was? Subject matter jurisdiction. That was then addressed on summary judgment. The district court that there was a lack of subject matter jurisdiction for the emergency listing claim. And what I'd like you to help me out on is, is there any evidence in the record on appeal that the Secretary did not consider the criteria which your citizen suit says should have been considered before the discretionary ruling was made? As to the substantive? Your Honor, I think you've stumped me. I hadn't anticipated that question, and I'll have to look at the ER and get back on the reply. You can't put your finger on it. Because if there isn't, then the error might not be preserved for appeal. Well, I'll check in the reply portion, though. All right. Counsel, you're down to under 4 minutes. You may wish to reserve or? I do wish to reserve, Your Honor. Well, why don't you go ahead and do that. Thank you. Thank you. We'll now hear from the government. Good morning, Your Honors, and may it please the Court. I'm Alice Thurston. This morning I'm representing the Department of the Interior. With me at council table is Mr. Wayne Howell, representing the State of Nevada. And I will be speaking for 17 minutes, and he will be speaking for 3. There are two issues primarily here, but I'd like to first off address some of the underbrush questions that seem to be confusing the Court, and I welcome more of them if I may. First, I'd like to address the chronology of the lawsuit and the decision that was made in this case. And then, Your Honor, as to the question of the greater sage-grouse, I'd like to clarify what has happened in that respect. In this case, the petition was filed early in 2003. An acknowledgement letter was sent out in the spring of 2003, and a decision was made – excuse me, 2002. I'm misspeaking. A decision was made on December 26th of 2002. The decision on December 26th was as to both the emergency request and as to the request to make the 90-day finding. In the district court, the district court judge gave plaintiffs the opportunity to amend their suit. The district court judge found that the request to have a 90-day finding made was rendered moot by the December 26 decision and allowed an amendation of the complaint, but the complaint was not sufficiently amended to show that there was any challenge to the December 2002 determination. In other words, the district court and the government were perplexed by the complaint, And the district court held that the plaintiffs were challenging only the acknowledgement letter that came out in March and that that was not a final agency action subject to suit and therefore dismissed the complaint. What about the argument that everybody knew since there was just the advisory letter in March that what you were really fighting over was the December letter and under liberal notice pleading rules, in effect, the complaint is conformed to the evidence and to the only letter that anybody is really arguing about? I missed the second part of it. Well, that the letter in December or the decision is really what was being argued about at that point. You know, I don't think that was what both the court and the government were expecting, but in fact, they removed a critical provision of their initial complaint, which was challenging the its section 4.7. It's on the exercise of record at page 8, I believe, and it's basically, it's basically the one section that said that the emergency listing determination was arbitrary and capricious, didn't use the best information. So having withdrawn that, Petitioners gave notice. I mean, they do, they are pursuing their claim that it was the letter that was at issue here. So they're trying to both, you know, challenge the decision in both documents. But the point I really want to make clear here is that nothing precludes plaintiffs from currently bringing a challenge to either the substance of the 90-day determination under the ESA or the emergency determination under the APA from that December 26 decision. Well, isn't there a statute of limitations problem? Yes, there's, for the APA, there's a six-year statute of limitations. Six years? Yes, sir, as to that emergency determination. Now, as to the greater sage-grouse, Your Honor, in our brief, Judge Brewer had mentioned that there was a 90-day finding which said that there might be substantial information that listing of the greater sage-grouse could be warranted. The agency proceeded to conduct a status review, and earlier this month made a determination that listing of the greater sage-grouse, which does include in the Fish and Wildlife Service's opinion the monosage-grouse, the determination earlier this month was that the greater sage-grouse is not warranted. So Mr. Webb is correct that this is the permanent listing, not even the emergency listing. This is the 12-month finding, it's called. And there was a positive 90-day finding, but that is, as to the substance of those listings, that is for a separate suit. It's, of course, open to challenge, as is the December 26 decision in this case. I think the problem that the district court had was that having Mr. Webb amended his complaint twice, having offered him the opportunity to amend the complaint and not having seen that there was any attack on the December 26 decision, and Mr. Webb disclaims attacking the 90-day decision, the actual substance of the 90-day decision. And it's been several years now. This was December of 2002. But it's not a – the district court was leaving it open. It wasn't a question of being, you know, too harsh or too strict in the reading of the complaint until the complaint was simply not made public. Kennedy, you heard Mr. Webb indicate that his view is that because of the different genetic makeup, the monosage grouse would not properly be included within the grader. I did. Any response? My response is that he has disclaimed making a substantive challenge to the 90-day finding in this case. That's where that issue would properly be brought up. And it is possible, although I'm not going to be speaking to this as an authoritative matter because that's not the case before the Court, it's possible that that could be an issue in the greater sage grouse proceeding, but I don't know what's at issue in that case because I haven't reviewed that. That's a wholly separate proceeding with respect to the greater sage grouse. Well, on this point, I mean, you would have us decided on technical pleading grounds, basically. And the district court said plaintiff's counsel conceded that the statute has no guidelines, et cetera. And then the plaintiff clarified in their brief that that's not what they were saying. And it seemed to me that all the briefing really was about the 90-day finding. It's my guess that Mr. Webb would tell you that he's also trying to challenge that earlier letter. The March letter. The March letter. And the district court, I think, correctly held that that was an interim letter and initial. Right. But as I said to him, what if we were to decide that that challenge doesn't have any legs? It then brings us to the December letter, which was the finding. And I have two questions on that. You said that he could, even if we determine on a technical pleading ground that that wasn't covered in his second claim, that he could still challenge it. Why isn't that 90-day finding, in effect, overtaken by events on the later finding of the greater sage-grouse, which includes the mono? Mr. Webb's purpose is to try to make the mono sage-grouse have a standalone status as a distinct population segment. And the agency does not agree with him that it's genetically distinct. The greater sage-grouse goes to the greater sage-grouse. Now, excuse me. As to that particular point, does Mr. Webb have another opportunity to appeal that determination? As to the 90-day finding? No, as to whether or not the mono is included in the greater. That turns, I believe, on the substance of the regulation in the greater sage-grouse. To the degree that he has the ability, which he does, to appeal the greater sage-grouse ruling, and he wants to make that claim there, then, yes, it may go forward. The government would concede that he has that opportunity if he were to? The reason I'm hesitant at all is because the greater sage-grouse regulation is lengthy. I haven't read it. It just came out on January 7th. And it's not specifically germane to the issues here. So that if it – I think it might be subsumed in that, but I would be unable to say that today. So should we ignore that? No, ma'am. So what – you see the government's kind of speaking outside of its mouth here. Well, I don't think he can necessarily appeal it, and yet the government has made a decision. So I just want to understand the government's position. What is the government's position on the effect of the most recent fish and wildlife determination on the greater sage-grouse, which also includes the mono? What effect does that have on this lawsuit? As to this lawsuit, I would say it has no effect. As to the listing of the species, however, I think that there is still an opportunity both to challenge the 90-day finding, and this goes to whether or not it's a distinct population segment. That's still available to Mr. Webb in this suit. I mean, not in this suit, but in the regulation that came out in this suit. And then the greater sage-grouse is a separate issue as to a larger group of grouse. Whether or not there is also in the greater sage-grouse determination some discussion of the subgroups, I don't know as a factual matter. It may be there. I can provide a supplemental briefing when I'd like to. I agree the Court would like that. I just don't happen to know that. But what I think is, is Mr. Webb still has an opportunity to go forward with respect to the distinct population segment argument as to the monosage-grouse, and he simply hasn't brought a suit. Well, and the government's position is that December 2002 finding was in direct response to his request for the emergency listing? Yes, sir. And when the Director And therefore the case is moot? That is the position of the government. We argue that in the district court. But the district court found that it was moot with respect to the 90-day finding. That's the teaching of Badgley in this Court. With respect to the timing of it, because of the Badgley decision, the Court was unable to, unwilling to say that it would not repeat itself. So the Court allowed for, after the, after the regulation issued, the Court allowed for emendation of the complaint. And it simply wasn't amended to address the substance of the 90-day finding. But that's still available to Mr. Webb. This is the, what I'm trying to say is I think this is the mess of this case should not be carried over into a substantive challenge with which may still go forward. And I think that Sausalito, Your Honor, while on point with respect to there being no harm, it is not necessarily applicable here, because I don't see that there's clear error. It's the government's, that there's harmless error. The government's position is that that March letter is not sufficiently final, as it is only an interim response, and it says it's only an initial review. It's not sufficiently final to warrant review. And I think I've lost your attention. If there are any questions, otherwise I'll cede my time to my colleague. No further questions at the moment. You may. Thank you very much. Please be seated. Good evening, police and court. My name is Wayne Howell. I'm a Deputy Attorney General from Nevada, and I'm here today to speak for the Nevada Department of Wildlife in this matter. And in my three minutes, I'm going to try to make three points, but the most important one I want to make is that Nevada has an interest in this litigation. An Oregon group sued in a Washington federal court to list a Nevada species that Nevada manages. And before Nevada. What's the standard of review? Is it arbitrary and capricious, or is it discretionary standard, or is it higher level? On intervention as of right, it is de novo review. So I'm here to argue that Nevada does have a right as a. But you were granted intervention, were you not? I'm sorry? You were granted intervention. Yes, Your Honor. And you could have been granted intervention on the lower standard, could you not? I'm sorry. Are you insisting upon a right to intervene as of right, or as a permissive intervener? Your Honor, we were granted intervention in both manners. And so I'm here to actually defend on both. But I would submit. I was just suggesting a shortcut to you. You're not taking the bait, I guess. Okay. Take the easy route. Like if it's abuse of discretion and the judge let you in on a permissive basis, you would be just as happy, correct? Yes, Your Honor. Certainly. And I will take that bait. Okay. Delayed it, though it is. Okay. But my point is that it's so important for Nevada to be heard in a matter that affects its jurisdiction over wildlife. And the court's granting of the permissive intervention was not an arbitrary or capricious decision. It was a decision made in good judgment based on that strong interest Nevada has. When a species is listed, the state loses authority over that species. The federal biologists take the reins from the state biologists. And from that point on, decisions are made that have to satisfy the federal government. And that's a very significant thing for a state. I'd also point out that the that listing, contrary to the Institute's position in their briefs, has an immediate effect. And that's why they're in this fight. And one of the effects is is a preemption of state jurisdiction. And that's why Nevada is in this fight. So, to just be brief. How does Nevada read that very recent determination about the greater sage grouse? Do you have a different point of view from the federal agency? Well, maybe I can just clarify a bit. The greater sage grouse includes the territory of the so-called mono sage grouse. It includes the territory. But you heard Mr. Webb make the point that there's a different genetic characteristic to the mono. Yes, Your Honor. And there is. Our state biologists know that. There is a different genetic characteristic. But that's not the only criterion used to determine whether there's a distinct population segment. Other criteria include behavioral differences, morphological differences, geographic isolation of the proposed DPS. And on those issues, there's no clarity whatsoever. Our state biologists are researching that as we speak and studying this so-called mono sage grouse. And perhaps there will be a time in the future when we have better information and that decision can be reconsidered. So we're getting back to the question was asked. Perhaps I didn't hear your answer all that well. But the decision that the secretary has made with respect to the greater grouse does not move this issue as the mono sage grouse. No, Your Honor. It doesn't. The decision was actually made with the letter decision. I'm sorry, the 90-day decision published by the Fish and Wildlife Service. The 90-day decision that was made in December. Is that the one? Yes. That was the decision that was supposed to be made within 90 days but was not. The actual published decision, the 90-day decision that was published in the Federal Register, addressed the DPS issue, if I'm not mistaken, and determined it in the negative on the basis of those factors which I just discussed. Well, with that, I would just ask for the decision to be upheld. And thank you, Your Honor. Thank you very much. Nothing further from the Federal Government? Very fine. Mr. Webb, you have reserved time. Let me make it very clear, first of all, that Congress protected distinct population segments of a species for a reason. It's right in the statute, as well as are subspecies protected. And the reason for that is that those are subcomponents of the species. And if one considers only species, then those subcomponents would be diluted if we don't protect all species. May I ask you a procedural point? Yes, ma'am. When Judge Peckman said that your complaint wasn't sufficiently broad to include the December, the substance of the December letter, and therefore she dismissed that claim as not being a final agency action, did you go back and ask for another opportunity to expand your complaint? No, Your Honor, because we think the complaint was quite proper. In Paragraph 3.18, that's on ER 44, it specifically references that December Federal Register denial of emergency listing. And that is incorporated into Claim 2, which is the one we're talking about here, in Paragraph 5.1. That's in ER 46. I don't know what else a defendant could ask for. Maybe, you know. Congress thought it was very important to protect subcomponents of a species. In fact, the original Endangered Species Protection Acts back in, I believe it was 1966 or perhaps 1969, did not include that. They specifically added distinct population segments, as I recall. We didn't brief that. If the Court wants supplemental briefing, we'd be pleased to do so. Well, from your point of view, what should the agency have done? You filed your demand in March. Is that correct, in 02? The notice letter, the complaint. I'd have to check the. In 02. There's a letter of December 02, which was in response, was it not, to your request. Well, if they meant that this was not a final action, then what they should not have done was use terms in discussing future actions. They should not have used terms like substantial information that relate to the regular 90-day listing. They should have said, we will reconsider your emergency listing request later. It's very simple. It's a simple declarative sentence. No need to do anything more than that. But they didn't do that. They made it look like they were not going to reconsider it. For example, they said that they wouldn't take a, that they had made an initial finding, initial review of the petition, and that's up in, I think, the second paragraph or the first large paragraph. Then lower, they said, we will make the initial finding. Okay. So it looked like they had done the review and denied emergency listing. It's their policy to review it for emergency listing initially when it comes in. So the letter states that they have done the initial review, but they have not made an initial finding and may not make one for quite a while. Well, if we accept your position that you're challenging the substance of the December finding, that is that the petition doesn't present substantial scientific and commercial information, then where do we look to determine whether you supplied record evidence that that wasn't the case? For the emergency listing claim? No, for the fact that it doesn't present substantial scientific or commercial information indicating that this listing may be warranted. Your Honor, I have a big red button to stop. What should I do? Please respond to the question. Okay. If that relates to the emergency listing claim, I don't see it in the excerpts of record. But it was a subject matter, it was a dismissal for lack of subject matter jurisdiction. That's what we want to do is go back to the district court and let the district court make that decision. And then it may or may not be appealed later on. At the summary judgment stage, did you think you were arguing over the substance of the December letter? We challenged the substance of the emergency listing decision. We did not challenge the substance of the 90-day finding in this suit. Okay. Thank you, counsel. Thank you. The case just argued will be submitted for decision. And we will now hear argument in Idaho Watersheds Project v. Burrell-Jones. Mr. Brooks.
judges: O'scannlain, McKeown, Bea